UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:

Delvin Lloyd Drinkall, Debtor.

Bankruptcy No. 19-31858
Adversary No. 19-03072

Delvin Lloyd Drinkall,

    Plaintiff,

v.

Corry & Associates; Robert J. Corry, Jr.,

    Defendants.

**AFFIDAVIT OF ROBERT CORRY, JR. IN SUPPORT OF
MOTION TO VACATE DEFAULT JUDGMENT**

STATE OF COLORADO  )
                               ) ss.
COUNTY OF ARAPAHOE  )

    I, Robert Corry, Jr., sworn under oath, state and allege on my own knowledge:

    1.    I am an attorney licensed to practice law, who is located in Denver, Colorado. I graduated from Stanford Law School in 1994, was licensed to practice law that same year, and have approximately 25 years of experience in the full-time practice of law. I own and operate the Law Office of Corry & Associates, a registered trade name for a Limited Liability Company (LLC) organized under the laws of the State of Colorado.

    2.    I met Delvin Drinkall through Mark D. Ray, a client and business associate of mine, whom I had known for over ten years.

1

3. Mr. Drinkall, entities associated with him, Mr. Ray, and entities associated with him, hired the law firm to handle business transactions for funds to be invested by a joint venture between Mr. Drinkall, Mr. Ray, and entities associated with or controlled by each man.

4. Nearly every retainer or other contract the law firm has used in the past ten years or so contains a mandatory arbitration clause for any and all disputes arising thereunder, under the rules of the American Arbitration Association with location of arbitration in Denver, Colorado. I recall preparing a retainer agreement for Drinkall in this instance, but at this time, I do not know whether it was executed.

5. It is important to note that any contractual or business relationship at issue related to Drinkall or his entities, was with an entity, and not with me individually. All of the transactions and funds at issue were handled by the law firm, which is a Limited Liability Company (LLC) organized under the laws of the State of Colorado.

6. It is my understanding based on conversations with them that Mr. Ray and Mr. Drinkall had known each other much longer than the ten years that I had known Mr. Ray. From my dealings with them, it was my understanding that Mr. Ray and Mr. Drinkall had done many business deals between them over the course of years, primarily in the livestock or cattle, in which Mr. Ray engages, and from our discussions, they appeared to have a mutual trust and understanding between them about their plans.

7. Mr. Drinkall and Mr. Ray each confirmed with me that they (and their entities) wished to enter into a business arrangement or joint venture with each other, whereby monies owned by entities controlled by Mr. Drinkall, or Mr. Drinkall

individually, would be invested in various opportunities over the ensuing months, in consultation with Mr. Ray, though the law firm.

8.  Mr. Drinkall and Mr. Ray expressed that a reason for using a law office to conduct wire transfers or other transfers of monies for these deals was that Mr. Drinkall preferred to keep the funds and the dealings confidential, as Mr. Drinkall anticipated personal or corporate bankruptcies, possible foreclosure of properties, and also a divorce, and thus may want to assert privileges in the future as to the communications relating to these funds.

9.  Mr. Ray further expressed that a reason for using a Colorado-based law firm to conduct transfer of funds was that the subject of some of these investments was the licensed marijuana business in Colorado, of which Mr. Ray and an entity he controlled held licenses. Although the licensed marijuana industry is legal and regulated by the State of Colorado and State law and Mr. Ray was to my knowledge in compliance with applicable laws therein, the federal legal status and also the ability to perform banking associated with this industry is uneven, uncertain, and is in a constant state of flux. Moreover, some other investors also wished their involvement in licensed marijuana to remain confidential, and using a law firm facilitated keeping the involvement confidential.

10. Both Mr. Ray and Mr. Drinkall confirmed with me and law firm staff that Mr. Ray was to be the point of contact for funds transfers, amounts, timing, and beneficiaries. The law firm was not requested to, and did not need to know, the specific purpose and subject matter of each and every funds transfer. On information and belief, based upon my knowledge of Mr. Ray and his business affairs, the subject matter of these

deals was usually either livestock or marijuana related, although I do not claim to the know the underlying substance of each and every transfer of funds.

11. Both Mr. Ray and Mr. Drinkall each confirmed that my point of contact would be Mr. Ray, inasmuch as he was based in Metro Denver, Colorado, as was I, and Mr. Ray and I had ongoing business or legal dealings already, saw each other periodically, and communicated frequently. Mr. Drinkall almost never communicated with me directly during the course of these dealings. Consistent with my understanding from the initial discussions with Mr. Ray and Mr. Drinkall, the law firm operated at the direction of Mr. Ray. At the outset, Mr. Drinkall confirmed this arrangement, so my understanding was that this arrangement was acceptable to him. Sometimes, these funds transfers were time sensitive and nearly always needed to be performed physically in person at the bank itself, not over the phone or electronically. As a result, my understanding and instructions were to complete the transfers as directed by Mr. Ray.

12. My direct recollection of each and every transfer of funds is limited, and as noted, even at the time I did not know the precise purpose of each transfer of funds. This information was beyond my role based on the arrangements made with Mr. Drinkall and Mr. Ray.

13. The law firm previously maintained bank accounts with Wells Fargo Bank. Attached as Exhibit 1 are the redacted account statements and other related documents associated with this account during February and March 2019. This account was not a dedicated account for Mr. Drinkall and his entities, and the law firm handled funds for other individuals, entities, or clients through this account, not associated with Mr. Drinkall, and these also appear herein.

4

14. None of Mr. Drinkall's or Drinkall entities' funds went to me individually or personally. All of the funds were invested with various individuals or entities, at Mr. Ray's direction, and I understood with Mr. Drinkall's authorization.

15. I have reviewed the financial records provided, and my preliminary recollection follows. With more time and formal discovery, I might be able to gain access to files and other documents that would allow me to formulate a more complete picture. In particular, if my counsel and I had the opportunity to conduct discovery, we could inquire as to Mr. Drinkall's own recollection of these transactions, as it was my understanding that Mr. Drinkall and Mr. Ray knew each other through previous business dealings.

16. I am unable to confer with Mark Ray or any of his associates about the substance of these various transactions to refresh my recollection about them, or about anything else. Mr. Ray is represented by counsel (not me) and will not discuss these matters, on advice of his counsel.

17. Mr. Ray and his associates are the subject of, or involved with, three pending court matters relating to finances, to my knowledge. Mr. Ray and entities are subject to a receivership in Denver District Court, David S. Cheval, Acting Securities Commissioner for the State of Colorado v. Mark Ray, et al., Case No. 19CV33770.

18. Second, Mr. Ray is a defendant in United States v. Mark Ray, U.S. District Court Central District of Illinois, Court Docket No. 4:20-cr-40007.

19. Third, there is an action brought in the U.S. District Court for Colorado, Securities and Exchange Commission ("SEC") v. Mark Ray et al., Civil Action File No. 1:19-CV-02789.

20. To the best of my recollection, the following transactions were for monies authorized by and associated with Mr. Drinkall or with Mr. Drinkall's entities. To the best of my memory, these transfers were authorized by Mark Ray, acting on behalf of their joint venture or Mr. Drinkall's or his entities' behalf.

21. The total amount of transfers noted below exceeds the amount of funds that Mr. Drinkall and his entities claim in this case. The reason for that is that either some of the transfers were not associated with Mr. Drinkall or his entities, or alternatively, that Mr. Drinkall or his entities actually received some profit or return from previous investments, and then re-invested the funds. Again, I am personally unaware of all of the histories of all of these funds, and if my counsel and I had the opportunity to conduct discovery in this matter, we could investigate this further. All of the transfers noted below, however, were associated with Mark Ray or his entities in some way.

2/8/19 wire transfer of $40,000.00 to Reva Stachniw in Monmouth, IL. Ms. Stachinew is a business partner or associate of Mark Ray and his entities, located in Southern Illinois, in or near Mr. Ray's hometown. Although this transfer was unrelated to this case to my knowledge, the law firm had represented Ms. Stachniw in an asset forfeiture action involving a vehicle and cash seized by the State of Kansas on the alleged ground that the assets were illegal inasmuch as they were associated with Colorado licensed marijuana entities, which are federally-illegal and illegal under the laws of Kansas.

2/8/19 wire transfer of $250,000 to Andre Johnson, Esq., of Manson Johnson Conner, PLLC in Nashville, TN, attorney for Joe Porter. On information and belief, Mr. Porter is a long-time business associate of Mr. Ray, in the cattle business, and had done many deals with Mr. Ray in the past.

2/8/19 wire transfer of $70,000 to Middlebrooks Holdings, LLC.

2/11/19 wire transfer of $113,000 to Reva Stachniw.

2/11/19 wire transfer $50,000 to Jordan Betensky, Sr.

2/13/19 wire transfer $14,000 to Materials Processing in Michigan City, IN.

6

2/14/19 wire transfer $50,000 to Delvin Drinkall in either Ostrander, MN or Adenton, TX.

2/14/19 wire transfer $26,000 to Barry Nowatzke in Michigan City, IN. Mr. On information and belief, Mr. Nowatzke is a long-time business associate of Mr. Ray's, and had done previous business deals with him. It is believed that Mr. Nowatzke is in the jewelry business, but I am not certain of this.

2/15/19 wire transfer $10,000 to Barry Nowatzke in Michigan City, IN

2/20/19 wire transfer $12,930 to Sunshine Enterprises in Galesburg, IL. Sunshine Enterprises in an entity either owned or controlled by Mr. Ray. The entity Sunshine Enterprises is the subject of the SEC and Receivership actions referenced above.

2/21/19 wire transfer $10,000 to Sunshine Enterprises.

2/26/19 wire transfer of $5,000 to Shurek Accounting and Tax, LLC in Flowery Branch, GA. On information and belief, this is an accountant who has done some work for Mr. Ray or his entities in the past, and these funds were for work performed around the time of the transfer of funds.

2/26/19 wire transfer $63,500 to Middlebrooks Holdings, LLC in Columbia, SC.

2/28/19 wire transfer $4,000 to Phoenix Consulting Enterprises in Buford, GA.

2/28/19 a $60,010 Withdrawal in Branch store. This amount of funds was for a certified check in the amount of $60,000 to the Colorado Department of Revenue for licensing fees for a licensed marijuana business, Universal Herbs, LLC, a receipt of the check is also provided herewith. It is my recollection that Mr. Drinkall or his entities probably had some loan or other involvement or interest in Universal Herbs, LLC. The extra $10.00 was probably a fee for the certified check. Universal Herbs, LLC is also the subject of the SEC and Receivership actions detailed above.

2/28/19 account transfer of $4,000 to Robert J. Corry, Jr., LLC. This was for work the law firm staff performed for Mr. Ray or his entities.

2/28/19 wire transfer of $7,500 to Sunshine Enterprises in Galesburg, IL.

3/1/19 wire transfer of $17,000 to Barry Nowatzke in Michigan City, IN.

3/1/19 wire transfer of $1,500 to Sunshine Enterprises in Galesburg, IL.

3/1/19 wire transfer $8,250 to Middlebrooks Holdings, LLC in Columbia, SC.

3/8/19 wire transfer $4,000 to Phoenix Consulting Enterprises in Buford, GA.

3/8/19 wire transfer $5,000 to Shurek Accounting and Tax, LLC in Flowery Branch, GA.

3/11/19 wire transfer $60,000 to Donald C. Decker/Delvin Drinkall in Adenton, TX.

22.     I am not requesting that this claim be dismissed, only that I have the opportunity to present the above and other evidence, so that the matter can be adjudicated fairly on the merits. I would not have ignored this matter had I been aware of the pending case and the motion for a default judgment. As I noted in my Declaration that was previously filed in support of this motion to vacate, I did not receive notice of the adversary action that was filed by Mr. Drinkall and did not receive notice of the motion for a default judgment before the default judgment was entered. Although Mr. Drinkall's counsel alleges a conversation with me only to the effect that Mr. Drinkall "may," sometime in the future, claim a right to recover the funds that were transferred to the law firm account, he never advised that there was an actual pending action at that time. I have a meritorious defense to this action, and respectfully request that I be permitted to defend the matter on the merits.

23.     As noted, none of the funds associated with Delvin Drinkall and Drinkall entities, with the possible exception of the $4,000 noted above, went to the law firm, while none of it went to me personally. All of the funds related to Drinkall and his entities were invested, loaned, or otherwise used for business purposes and provided to another entity, at the direction of Mark Ray, and with the authorization of Delvin Drinkall.

24.     If the default judgement against me personally or the law firm is upheld, a claim will be filed with the Receivership noted above. I and the entity have meritorious

8

defenses in this litigation, and respectfully request that we be permitted to assert these.

Thank you for your consideration and attention to this matter.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Dated: April 8, 2020

_____
Robert Corry, Jr.

Subscribed and sworn to be before me on this 8th day of April, 2020

_____
Notary Public

DALLAS LIVINGSTON
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20164043266
MY COMMISSION EXPIRES 11/14/2020